```
                    UNITED STATES BANKRUPTCY COURT
                   FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                           )
                                 )     Chapter 7
CHAPMAN LUMBER COMPANY, INC.,    )
                                 )     Bankruptcy No. 05-00408
     Debtor.                     )
-----------------------------    )
QUAD CITY BANK,                  )
                                 )     Adversary No. 06-09114
     Plaintiff,                  )
                                 )
vs.                              )
                                 )
SIEBKE AND HOYT, INC.,           )
                                 )
     Defendant.                  )
```

**ORDER RE: COMPLAINT TO AVOID FRAUDULENT TRANSFERS**

This matter came before the undersigned for trial on August 2, 2007. Plaintiff Quad City Bank was represented by attorney Clint McCord. Defendant Siebke and Hoyt, Inc. was represented by attorney R.L. Sole. After the presentation of evidence and argument, the Court took the matter under advisement. Briefs have been filed and this matter is ready for determination. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

**STATEMENT OF THE CASE**

The Bank asserts Debtor committed actual fraud by using corporate funds to pay for merchandise purchased from Defendant by Debtor's president, Keith Chapman. It seeks return of the payments as fraudulent transfers under the Iowa Uniform Fraudulent Transfers Act. Defendant argues the Bank has failed to prove actual fraud. Furthermore, it asserts it took the funds in good faith and for reasonably equivalent value.

The issues in this proceeding are identical to those presented in a separate adversary proceeding filed by the Bank, <u>Quad City Bank v. Berstler</u>, Adv. No. 06-9112. On August 8, 2007, the Court filed a final ruling in that proceeding. The Court hereby adopts the findings and conclusions set out in that order, attached hereto, as part of the findings and conclusions in this case with the following additions.

Between December 23, 2001 and May 10, 2003, Keith Chapman paid for merchandise purchased at Defendant's store, in the total amount of $5,778.23, with Debtor's corporate funds. The Bank asserts the purchases were for personal jewelry for Mr. Chapman and, presumably, his wife. It argues that Debtor received no value in exchange for the transfer of its funds. The Bank does not deny that the items purchased had a retail value equivalent to the amounts paid. Further, the Bank's only asserted argument regarding Defendant's bad faith is Defendant's failure to determine whether the corporation authorized the use of corporate funds for the purchases.

As discussed in the final order in Adv. No. 06-9112, the Court finds the Bank has failed to prove, by clear and convincing evidence, actual intent under Iowa Code sec. 684.4(2). Further, even if the Court were to find the Bank met its burden to prove actual fraud under sec. 684.4(2), Defendant is protected by the "good faith" defense under sec. 684.8(1). The Court concludes that the Bank may not recover the payments from Debtor to Defendant as fraudulent transfers under Iowa Code sec. 684.4(2).

**WHEREFORE**, the Bank's Complaint to Avoid Fraudulent Transfers is DENIED.

**FURTHER**, the payments to Defendant Siebke and Hoyt, Inc. are not avoidable as fraudulent transfers.

**FURTHER**, judgment shall enter accordingly.

DATED AND ENTERED: August 31, 2007

PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE

```
                   UNITED STATES BANKRUPTCY COURT
                  FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                            )
                                  )     Chapter 7
CHAPMAN LUMBER COMPANY, INC.,     )
                                  )     Bankruptcy No. 05-00408
     Debtor.                      )
------------------------------    )
QUAD CITY BANK,                   )
                                  )     Adversary No. 06-09112
     Plaintiff,                   )
                                  )
vs.                               )
                                  )
REBEKA BERSTLER D/B/A             )
CLINIC OF ELECTROLOGY,            )
                                  )
     Defendant.                   )
```

**ORDER RE: COMPLAINT TO AVOID FRAUDULENT TRANSFERS**

This matter came before the undersigned for trial on June 26, 2007.  Plaintiff Quad City Bank was represented by attorneys Clint McCord and Paula Roby.  Defendant Rebeka Berstler was represented by attorney Robert O'Shea.  After the presentation of evidence and argument, the Court took the matter under advisement.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

**STATEMENT OF THE CASE**

The Bank asserts Debtor committed actual fraud by using corporate funds to pay for hair removal services provided by Defendant to Debtor's president, Keith Chapman.  It seeks return of the payments as fraudulent transfers under the Iowa Uniform Fraudulent Transfers Act.  Defendant argues the Bank has failed to prove actual fraud.  Furthermore, she asserts she took the funds in good faith and for reasonably equivalent value.

**FINDINGS OF FACT**

Debtor Chapman Lumber Co. filed a Chapter 11 petition on February 8, 2005.  The case has since been converted to Chapter 7 and Wesley Huisinga was appointed as Chapter 7 Trustee.  He assigned to Quad City Bank certain fraudulent transfer claims of the bankruptcy estate, including the one asserted in this adversary proceeding.

Between January 26, 2001 and June 26, 2002, Defendant provided hair removal services to Keith Chapman. Defendant used laser treatments to remove hair from Mr. Chapman's back. Mr. Chapman paid for these services, in the total amount of $5,775, with Debtor's corporate funds. Mr. Chapman was President of Chapman Lumber Co. at the time. He made the payments by writing checks drawn on Debtor's account at Wells Fargo Bank Iowa, N.A.

Debtor opened the account with Wells Fargo Bank with a Business Account Application dated 6/10/1999 signed by Keith Chapman as "Owner/President." The tax ID number used for the account is XX-XXX4417.[1] This is actually Keith Chapman's Social Security Number, and not the corporation's tax ID number. Debtor did not disclose this bank account on its bankruptcy schedules. Trustee was not aware of the account until a fraud alert notice was sent to the office of Chapman Lumber Co concerning an attempted change of address for the account. Corporate records admitted as exhibits indicate that Keith Chapman became the sole officer of the corporation sometime in 1999.

Defendant Rebeka Berstler testified that, considering the time that has elapsed, she vaguely remembers treating Mr. Chapman. She stated that she does not personally receive the payments at her business. Instead, an office manager or nurse works the front desk and collects checks. Ms. Berstler testified that after she searched her files, she found that Mr. Chapman paid for her services with company checks. She stated that this is not unusual among her clients who own businesses. Mr. Chapman did not provide, and Ms. Berstler did not request, a corporate authorization allowing payment from the corporate account for Ms. Berstler's hair removal services. Ms. Berstler was not aware of any problems with the checks until she was served with the complaint in this action which was filed on June 20, 2006.

## CONCLUSIONS OF LAW

Bankruptcy trustees have several methods available to avoid fraudulent transfers. The Bankruptcy Code contains a provision which allows trustees to avoid transfers made with actual intent to hinder, delay or defraud any entity. 11 U.S.C. § 548(a)(1)(A) (actual fraud). It also allows for avoidance of transfers for which the debtor received less than reasonably equivalent value, while insolvent. 11 U.S.C. § 548(a)(1)(B) (constructive fraud). Actions to avoid such transfers must be brought within one year

---

[1] The first five numbers are each reflected as an X in this opinion in lieu of the actual numbers.

2

before the petition date for bankruptcy cases, such as this one, which were commenced prior to October 17, 2005.  <u>See</u> 11 U.S.C. § 548(a)(1) (2005).[2]

Trustees may also use § 544(b)(1) to avoid a transfer that is avoidable under applicable law, such as Iowa's Uniform Fraudulent Transfer Act (UFTA).  <u>In re Schaefer</u>, 331 B.R. 401, 416 (Bankr. N.D. Iowa 2005); Iowa Code ch. 684.  Actions under the Iowa UFTA may be brought within five years after the transfer was made or within one year after the transfer was discovered by the claimant.  Iowa Code § 684.9(1).  Like § 548 of the Bankruptcy Code, the Iowa UFTA contains provisions for recovery of transfers for both actual fraud and constructive fraud.  <u>Schaefer</u>, 331 B.R. at 416; Iowa Code §§ 684.4, 684.5.  Under Iowa law, the "[p]laintiff must prove each of the elements of a fraudulent transfer by clear and convincing evidence."  <u>Benson v. Richardson</u>, 537 N.W.2d 748, 756 (Iowa 1995); <u>Schaefer</u>, 331 B.R. at 416.

From the options listed above, the Bank has chosen to assert that the transfers to Ms. Berstler are avoidable for actual fraud under Iowa Code sec. 684.4(1)(a), which states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor.

Ms. Berstler raises a defense under sec. 684.8(1), which states:

> A transfer or obligation is not voidable . . . against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.

The Bankruptcy Code contains a similar defense at 11 U.S.C. § 548(c).  Generally, courts have noted that the provisions of the UFTA parallel § 548 of the Bankruptcy Code, and the same analysis applies under both laws.  <u>In re Ziegler</u>, 320 B.R. 362, 372 (Bankr. N.D. Ill. 2005); <u>In re Sun Valley Prods., Inc.</u>, 328 B.R. 147, 155-56 (Bankr. D.N.D. 2005).  When applying the UFTA, courts may look to cases decided under § 548 as well as cases

---

[2]The one-year limitation was increased to two years by the BAPCPA which applies to cases filed on or after October 17, 2005.

3

interpreting other states' versions of the UFTA for assistance.
In re Image Worldwide, Ltd., 139 F.3d 574, 576-77 (7th Cir.
1998).

### BADGES OF FRAUD

The UFTA lists multiple factors to consider in determining intent in cases of actual fraud:

   a. Whether the transfer or obligation was to an
      insider.

   b. Whether the debtor retained possession or control of
      the property transferred after the transfer.

   c. Whether the transfer or obligation was disclosed or
      concealed.

   d. Whether, before the transfer was made or obligation
      was incurred, the debtor had been sued or threatened
      with suit.

   e. Whether the transfer was of substantially all the
      debtor's assets.

   f. Whether the debtor absconded.

   g. Whether the debtor removed or concealed assets.

   h. Whether the value of the consideration received by
      the debtor was reasonably equivalent to the value of
      the asset transferred or the amount of the obligation
      incurred.

   i. Whether the debtor was insolvent or became insolvent
      shortly after the transfer was made or the obligation
      was incurred.

   j. Whether the transfer occurred shortly before or
      shortly after a substantial debt was incurred.

   k. Whether the debtor transferred the essential assets
      of the business to a lienor who transferred the assets
      to an insider of the debtor.

Iowa Code § 684.4(2).

These factors in the UFTA have been known at common law as badges or indicia of fraud. See Benson v. Richardson, 537 N.W.2d 748, 756 (Iowa 1995). Ordinarily, the presence of more than one of the badges of fraud is necessary to warrant an inference of fraud in a transaction. Ralfs v. Mowry, 586 N.W.2d 369, 373 (Iowa 1998); In re Sherman, 67 F.3d 1348, 1354 (8th Cir. 1995). The convergence of several badges of fraud may support an inference of fraud, which grows in strength as the badges increase in number. Textron Fin. Corp. v. Kruger, 545 N.W.2d 880, 883 (Iowa 1996); Kelly v. Armstrong, 141 F.3d 799, 802 (8th Cir. 1998). Courts evaluate the circumstances of a transaction as a whole. Hartford-Carlisle Sav. Bank v. Shivers, 552 N.W.2d 909, 911 (Iowa App. 1996). "Mere ground for suspicion does not make a case in favor of a creditor." Id. (citations omitted).

In In re Holcomb Health Care Services, LLC, 329 B.R. 622, 671-72 (Bankr. M.D. Tenn. 2004), the court found sufficient badges of fraud to infer fraudulent intent under § 548(a)(1)(A) where the defendant was using the corporation as his personal "piggy bank" to fund all of his various interests. In H. King & Assoc., 295 B.R. 246, 282-85 (Bankr. N.D. Ill. 2003), the court found sufficient badges of fraudulent intent under § 548(a)(1)(A) where the debtor wrote checks payable to its president, the president's wife or "Cash." In In re Major Funding Corp., 126 B.R. 504, 508 (Bankr. S.D. Tex. 1990), the court considered the totality of the circumstances and found the requisite intent to defraud under § 548(a)(1)(A) where the defendant commingled funds from various corporate accounts and intentionally used corporate funds for his or his family's personal benefit.

### "GOOD FAITH" DEFENSE

A defense under sec. 684.8(1) of the Iowa UFTA consists of two elements: good faith and reasonably equivalent value. In re Knippen, 355 B.R. 710, 733 (Bankr. N.D. Ill. 2006) (considering the Illinois UFTA). To find good faith, courts look to what the transferee knew or should have known and whether the transaction carries the earmarks of an arms-length bargain. Sherman, 67 F.3d at 1355. "If the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and diligent inquiry would have discovered the fraudulent purpose, then the transfer is fraudulent." In re World Vision Entm't, Inc., 275 B.R. 641, 659 (Bankr. M.D. Fla. 2002). Through this objective standard, the court questions whether the defendant was aware of a debtor's precarious financial situation or looming insolvency at the time of the transfer. Id.; In re Armstrong, 285 F.3d 1092, 1098 (8th Cir. 2002) (holding casino had not acted in good faith when it accepted payment from financially troubled debtor).

5

The second element of the "good faith" defense is whether the transferee took the transfer "for a reasonably equivalent value." The Bank argues, citing In re Roti, 271 B.R. 281, 299 (Bankr. N.D. Ill. 2002), that Defendant conferred no value to Debtor, the corporation, where the transferred funds of the corporate Debtor were used to pay for personal expenses of Mr. Chapman. Ms. Berstler asserts that the Roti discussion of this defense was based on § 548(c), which requires that the transferee "gave value to the debtor in exchange for such transfer." 11 U.S.C. § 548(c) (emphasis added). She notes that Iowa Code sec. 684.8(1) does not require that the reasonably equivalent value be given to the debtor. Also distinguishable is the Iowa UFTA constructive fraud provision in sec. 684.4(1)(b) which requires that the debtor made the transfer, while insolvent, "[w]ithout receiving a reasonably equivalent value." See also 11 U.S.C. § 548(a)(1)(B)(i) (the Bankruptcy Code's constructive fraud provision requires the debtor received less than a reasonably equivalent value in exchange for transfer).

Ms. Berstler argues that the "good faith" defense "does not require that the debtor receive a reasonably equivalent value, it only requires that the person taking the transfer provide a reasonably equivalent value." Def. Trial Brief, at p. 6 (Doc. 21). The cases cited in Defendant's brief are not particularly helpful on this issue. Most of the cases which discuss value arise in the context of a constructive fraud analysis. See, e.g., In re Bargfrede, 117 F.3d 1078, 1080 (8th Cir. 1997) (finding debtor did not receive reasonably equivalent value under § 548(a)(1)(B)(i) where the transfer benefitted the debtor's wife, not him); In re Southern Health Care, Inc., 309 B.R. 314, 320 (B.A.P. 8th Cir. 2004) (noting transfers for the benefit of a third party do not provide any reasonable equivalent benefit for the debtor under § 548(a)(1)(B)(i)); In re Fox Bean Co., 287 B.R. 270, 281-82 (Bankr. D. Idaho 2002) (using debtor's funds to pay off the debt of another entity did not benefit debtor in any way under § 548(a)(1)(B)(i)).

The Bank asserts that the Roti case is on point with this case. In Roti, the court identified at least eight badges of fraud under the "actual fraud" provisions of the Bankruptcy Code and the Illinois UFTA. 271 B.R. at 303. And, as Ms. Berstler points out, its analysis of the "good faith" defense is based on § 548(c) of the Bankruptcy Code, not on the Illinois UFTA. Id. at 304 (referring to its § 548(c) analysis in answer to defendants assertion of defense under the UFTA).

There is a dearth of case law on point considering the meaning of value under the "good faith" defense of the UFTA. One

6

Court has distinguished the similar defense in § 548(c) from the "reasonable equivalency" test found at § 548(a)(1)(B)(i).  <u>See</u> <u>In re Hannover Corp.</u>, 310 F.3d 796, 802 (5th Cir. 2002).  It stated that the Bankruptcy Code's constructive fraud provision asks whether the debtor received enough.  <u>Id.</u>  In comparison, the good faith defense

> looks at value from the perspective of the transferee: How much did the transferee "give"?  The concern here, quite properly, is for the transferee's side of the exchange, not the transferor's gain.

<u>Id.</u>  Another court has noted that the § 548(c) defense is based on "value given" and "good faith" rather than the impact of the transaction upon the estate.  <u>In re Financial Federated Title & Trust, Inc.</u>, 309 F.3d 1325, 1332 (11th Cir. 2002) (finding that the fact that services performed by agents in Ponzi scheme increased debtors' insolvency does not preclude a determination that the agents gave value).

In <u>In re Peet Packing Co.</u>, 233 B.R. 387 (Bankr. E.D. Mich. 1999), the court considered the good faith defense under the Michigan Uniform Fraudulent Conveyance Act ("MUFCA"), which is the predecessor to the UFTA.  That act protects a "purchaser for fair consideration", which requires findings that the party acted in good faith and the values exchanged were a fair equivalent.  <u>Id.</u> at 390-91.  The court noted that the good faith defense focused on the transferee, asking

> whether the transferee, in good faith, conveyed something of value that is a fair equivalent to what he received.  Thus, when analyzing the term within the context of the various MUFCA sections, it does not seem that what constitutes "fair consideration" is always to be measured by what the transferor received.

<u>Id.</u> at 392.  The court compared the MUFCA good faith defense with other areas of law which address the rights of a "purchaser for fair consideration," including the holder in due course defense under the U.C.C., the law of contract, the law of restitution and the law of stolen property.  <u>Id.</u> at 395-96.

In <u>Peet Packing</u>, the debtor's principal had arranged for the debtor to pay wages to employees of the principal's separate business, including the defendant who was the principal's son.  <u>Id.</u> at 390.  The defendant's labors were for an unrelated business, not the debtor.  <u>Id.</u>  The court concluded that

7

> A logical reading of the plain language of MUFCA and
> the relevant case law all lead to the conclusion that
> Defendant is protected by [MUFCA's] exception for a
> "purchaser for fair consideration."

Id. at 394.

## CONCLUSIONS

First, the Court must determine whether the Bank has provided clear and convincing evidence of actual fraud by Debtor. Out of the 11 listed badges of fraud in Iowa Code sec. 684.4(2), the Bank acknowledges all but perhaps two are not present in this case. It argues that subsections (c) and (g) are the relevant badges of fraud, i.e. the transfer was concealed and the debtor removed or concealed assets. See Iowa Code § 684.4(2)(c) and (g). The Bank asserts that Debtor concealed the transfer by using an incorrect tax I.D. number on the checking account from which payments were made to Ms. Berstler. It also asserts Debtor concealed assets by failing to disclose the checking account on its bankruptcy schedules.

The payments to Ms. Berstler occurred from early 2001 until mid-2002. The checking account was opened in mid-1999. Debtor filed its bankruptcy petition in early 2005. At the time of the transfers, no actual concealment occurred. A couple years earlier, Mr. Chapman used an incorrect tax ID when opening a checking account in the name of the corporation. A couple years later, Debtor filed bankruptcy schedules without disclosing the existence of that account. It is difficult to find a nexus between these events sufficient to support a finding of fraudulent intent at the time of the transfers.

The Court must determine that Debtor, or Mr. Chapman as president of the corporation, actually intended to defraud creditors by paying for hair removal services provided by Ms. Berstler. Based on the record presented, the Court cannot say such intent is indicated by clear and convincing evidence. In cases cited above finding actual intent from the use of corporate funds for personal reasons, many other badges of fraud were present. In this case, only two badges of fraud are implicated and the alleged occurrences of these events are remote in time. Assuming without deciding that Mr. Chapman's use of corporate funds for personal services was improper, the record presented by the Bank fails to support an inference of actual fraud, but, at best, merely raises ground for suspicion.

8

Even if the Court were to find the Bank met its burden to prove actual fraud under sec. 684.4(2), Ms. Berstler is protected by the "good faith" defense under sec. 684.8(1).  The Bank does not dispute that Ms. Berstler's services gave value reasonably equivalent to the amount paid for the services.  Based on the foregoing law, the Court concludes that this value need not be received by Debtor under sec. 684.8(1).  The language of the statute does not require this and the proper perspective is to determine what Ms. Berstler gave, rather than what Debtor received.

Further, Ms. Berstler acted in good faith when she took payment by Debtor's company checks.  Nothing in the record indicates any knowledge of Ms. Berstler that Mr. Chapman might have been acting with fraudulent intent.  Nothing in the record indicates that Debtor was having financial difficulties at the time Ms. Berstler received company checks from Mr. Chapman.  The Court does not accept the Bank's implication that it is unreasonable for a business to accept company checks for personal services without inquiring into whether the company authorized such payment.  Based on the foregoing analysis, the Court concludes that the Bank may not recover the payments from Debtor to Ms. Berstler as fraudulent transfers under Iowa Code sec. 684.4(2).

**WHEREFORE**, the Bank's Complaint to Avoid Fraudulent Transfers is DENIED.

**FURTHER**, the payments to Defendant Rebeka Berstler are not avoidable as fraudulent transfers.

**FURTHER**, judgment shall enter accordingly.

DATED AND ENTERED: August 8, 2007

_____
PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE

9